THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:13-cv-00056-MR-DLH

| | |
|---|---|
| RICHARD ERIC TAYLOR, Individually and as Personal Representative of the Estate of DIANNE GRUBB TAYLOR, Deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>ALCATEL-LUCENT USA, INC.<br><br>        Defendant. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court for resolution of the Defendant's Motion to Dismiss [Doc. 7].

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

The Plaintiff Richard Eric Taylor ("Mr. Taylor") filed this action on March 1, 2013 against the Defendant Alcatel-Lucent USA, Inc. ("Lucent"), for claims of negligence and breach of an implied warranty of merchantability as a consequence of the alleged asbestos exposure that caused his wife Diane Grubb Taylor ("Ms. Taylor") to die from asbestos-related mesothelioma on April 24, 2011. Lucent is the successor to Western Electric Company, Inc. ("Western Electric"), which was part of the

AT&T network along with Southern Bell Telephone Company ("Southern Bell"), where Ms. Taylor worked. [Doc. 7-1 at 2].

The Taylors were involved in litigation regarding Ms. Taylor's asbestos-related mesothelioma even before her death. They filed a worker's compensation claim against Southern Bell in North Carolina. [Doc. 7-2]. On October 21, 2010, they filed a civil action in South Carolina state court, in relation to Ms. Taylor's alleged exposure to asbestos from her father's employment. [Docs. 10 at 5, 7-4]. In the South Carolina case, they named numerous defendants involved in the production and distribution of asbestos products. [Id.]. Lucent was added as a defendant in that case in April 2011, and the case was amended to include a wrongful death claim after Ms. Taylor's death.[1] [Doc. 7-4]. Since Mr. Taylor's claims cannot succeed in the South Carolina case due to a state "door closing statute," S.C. Code Ann. § 15-5-150, which prevents a non-resident plaintiff from pursuing an action in South Carolina state court where the cause of action did not arise in that state, Mr. Taylor has moved to dismiss the South

---

[1] The Taylors filed another civil case on October 28, 2010 in Mecklenburg County Superior Court, North Carolina, against Norfolk Southern Railway Company in relation to alleged exposure from Ms. Taylor's father's employment. [Doc. 7-12]. This case was transferred to MDL 875 in the U.S. District Court for the Eastern District of Pennsylvania. [Id.]. After Ms. Taylor died in April 2011, Mr. Taylor filed an action in Rowan County Superior Court, re-alleging claims against Norfolk Southern Railway Company. [Doc. 7-13].

2

Carolina action without prejudice. Lucent, however, has moved for summary judgment in the South Carolina case. [Doc. 10-1].

On December 19, 2012, Mr. Taylor filed suit against Lucent in Delaware state court, in relation to Ms. Taylor's alleged exposure to asbestos from her work environment at Southern Bell where she worked as a telephone operator and through her husband's work environment at AT&T where he worked as a technician. [Doc. 7-8]. Lucent obtained a dismissal without prejudice in the Delaware action on the basis of *forum non conveniens* on March 4, 2013, giving Mr. Taylor opportunity to re-file in an appropriate jurisdiction. [Doc. 7-11 at 2-3].

Thereafter, Mr. Taylor filed this present action in this Court on March 1, 2013, alleging claims related to his wife's exposure to asbestos through both his and her work environments. [Doc. 1 at ¶¶ 6, 25]. Mr. Taylor claims that Western Electric made asbestos-containing products for both of the employment sites, and that Western Electric employees caused asbestos to be released into the air by many activities at both the Southern Bell and AT&T locations. [Id. at ¶¶ 8-25]. Lucent has moved to dismiss and/or stay this action pursuant to the abstention doctrine outlined in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). [Doc. 7]. Alternatively, Lucent argues that the Court should

dismiss this action in the exercise of its discretion based on Mr. Taylor's abuse of the judicial process. [Doc. 7].[2] In the event that the Court declines to dismiss this action, Lucent requests an Order to stay the case pending payment by Mr. Taylor of Lucent's attorney's fees and/or costs incurred in defending Mr. Taylor's prior litigation pursuant to Fed. R. Civ. P. 41(d), Fed. R. Civ. P. 11, and 28 U.S.C. § 1927. [Id. at 2]. Mr. Taylor opposes Lucent's motion. [Doc. 10].

Having been fully briefed, this matter is ripe for review.

## II. ANALYSIS

### A. Colorado River Abstention Doctrine

The Supreme Court has stated that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976). "[A]s between state and federal courts, the rule is [generally] that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . ." Id. at 817 (citations and

---

[2] In its Memorandum in Support of Motion to Dismiss [Doc. 7-1], Lucent also noted that "Plaintiff's claims are barred by the exclusivity provision of the Workers Compensation Act." This argument was not briefed nor was it a basis for the Motion to Dismiss [Docs. 7, 7-1]. Accordingly, the Court will not address this argument further.

internal quotes omitted). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id.

There are three main categories of cases in which abstention is appropriate: (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," id., at 814 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)); (2) "difficult questions of state law bearing on policy problems of substantial public important whose importance transcends the result in the case then at bar," id. at 814 (citing Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959)); and (3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, or collection of state taxes." Id. at 816 (internal citations omitted).

The present case does not fall within any of these categories. Nevertheless, "federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings and '[w]ise judicial administration,

5

giving regard to conservation of judicial resources and comprehensive disposition of litigation[,]' clearly favors abstention.'" Vulcan Chem. Technologies, Inc. v. Barker, 297 F.3d 332, 340-41 (4th Cir. 2002) (quoting Colorado River, 424 U.S. at 817).

As a threshold matter, Colorado River abstention is only appropriate where there are parallel federal and state suits. See Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991). For legal issues to be logically deemed "substantially similar" they must at least share common factual allegations and applicable law. See Chase Brexton, 411 F.3d at 464-65. "When a district court decides to dismiss or stay under Colorado River, it presumably concludes that parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983).

"If parallel suits exist, then a district court must carefully balance several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" Chase Brexton, 411 F.3d at 463 (quoting Moses H. Cone

6

Mem'l Hosp., 460 U.S. at 16). Six factors have been identified to guide the analysis of Colorado River abstention: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. Chase Brexton, 411 F.3d at 463-64; Gannett Co., Inc. v. Clark Const. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002). The task of this Court "is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, our task is to ascertain whether there exist exceptional circumstances, the clearest of justifications . . . to justify the surrender of that jurisdiction." Ackerman v. ExxonMobil Corp., 734 F.3d 237, 249 (4th Cir. 2013) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 25-26).

While the present action involves some of the same parties as the South Carolina action and both actions contain claims for negligence, breach of warranty, and Mr. Taylor's loss of consortium, the causes of action are based on entirely distinct factual allegations. [Docs. 1, 7-4]. The

factual allegations in the South Carolina action all pertain to Ms. Taylor's asbestos exposure resulting from her father's employment as a plant worker. [Doc. 7-4]. By contrast, the action filed in this Court alleges asbestos exposure resulting from Ms. Taylor's employment at Southern Bell and Mr. Taylor's employment with a division of AT&T. [Doc. 1]. The two cases are not parallel because the claims themselves are not the same, and the overlap that the two cases may share is merely incidental to the coincidence of the same defendant Lucent, the successor of an asbestos manufacturer.[3] While there are doubtless certain questions of fact that could have arisen in Mr. Taylor's South Carolina suit which might also need to be addressed in this case, "'the Colorado River doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals.'" New

---

[3] The cases that Lucent cites to support its premise that, for Colorado River purposes, "the issues need only be substantially similar, not identical," do not support the argument that claims arising from completely separate factual allegations are logically capable of constituting parallel actions. See Baseline Sports, Inc. v. Third Base Sports, 341 F. Supp. 2d 605, 608 (E.D. Va. 2004) (federal suit found parallel where claims were a "mirror image" of state suit counterclaims, but for addition of parties); E. Associated Coal Corp. v. Skaggs, 272 F. Supp. 2d 595, 599 (S.D. W.Va. 2003) (where there was no contention that the federal and state suits were not parallel); Automated Sys. & Programming, Inc. v. Cross, 176 F. Supp. 2d 458, 462-63 (D. Md. 2001) (where the court abstained, *sua sponte*, from exercising jurisdiction over a fraud claim, filed in federal court, that directly related to a breach of contract claim pending in state court).

8

Beckley Min. Corp., 946 F.2d at 1073 (quoting United States v. SCM Corp., 615 F. Supp. 411, 417 (D. Md. 1985)).

Further, the balance of relevant factors counsels that this is not the exceptional case anticipated by Colorado River. The first factor, regarding the involvement of property, is not applicable to this case. Chase Brexton, 411 F.3d at 463-64. The second factor relates to whether the federal forum is inconvenient. Id. Here, Lucent will not have to continue litigating in South Carolina once the current dispositive motions are addressed there, and Lucent may well incorporate discovery materials from the South Carolina action into this action. Further, Mr. Taylor lives in North Carolina, Ms. Taylor worked in North Carolina, and many documents and witnesses will still likely be in North Carolina. Thus, the present federal forum is not inconvenient.

The third factor, which relates to avoiding piecemeal litigation, does not weigh in favor of abstention. Id. Any concerns Lucent may have about being subject to piecemeal litigation will likely be rendered moot by the resolution of the current motions, which will dispose of the South Carolina action. In any event, the South Carolina "door closing statute," S.C. Code Ann. § 15-5-150, prevents Mr. Taylor from litigating any asbestos claims in that state based on injuries incurred in North Carolina. As such, the claims

presented in the present action could not have been presented in the South Carolina action. Finally, to the extent that any factual or legal issues have already been litigated, the doctrines of collateral estoppel and *res judicata* will prevent any prejudice to Lucent arising from the multiple actions maintained by Mr. Taylor against it.

The fourth factor considers the order in which the courts obtained jurisdiction and the progress achieved in each action. Id. Although Lucent argues that substantial proceedings have progressed in state court including discovery, the grant of Mr. Taylor's motion for an expedited trial, and Lucent's presence in the case since April 2011, [Doc. 7-1 at 9-10], this factor is not solely determinative and must be considered in conjunction with the other factors.

The fifth factor relates to whether state or federal law provides the rule of decision for the case. Chase Brexton, 411 F.3d at 463-64. In this case, no federal law is implicated. Rather, North Carolina state law serves as the governing law, since the claims asserted in the present action all arose from alleged asbestos exposure in North Carolina. As previously noted, these North Carolina claims are not and indeed cannot be asserted in the South Carolina action. Accordingly, this factor does not weigh in favor of abstention.

The sixth factor considers the protection of the parties' rights in the state action. Id. As previously noted, abstention in this case would not protect the parties' rights, due to the South Carolina "door closing statute," S.C. Code Ann. § 15-5-150, which prevents Mr. Taylor from obtaining relief in South Carolina with regard to his claims based on North Carolina injuries. Regardless of how the South Carolina case is disposed, Mr. Taylor's claims in this Court are unlikely to be resolved by that outcome since they are based on distinct factual allegations.

Thus, for the reasons stated above, this Court will not abstain from exercising its jurisdiction over this case.

### B. Abuse of Process

As defined in Stanback v. Stanback, 297 N.C. 181, 200-01, 254 S.E. 2d 611, 624 (1979), "abuse of process" is:

> the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is [intended] to be secured. See Barnette v. Woody, 242 N.C. 424, 88 S.E.2d 223 (1955); Finance Corp. v. Lane, 221 N.C. 189, 19 S.E.2d 849 (1942); Wright v. Harris, 160 N.C. 542, 76 S.E. 489 (1912). . . . [A]buse of process "requires both an ulterior motive and an act in the use of the legal process not proper in the regular proceeding .

> . . [and] [b]oth requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect." R. Byrd, <u>Malicious Prosecution in North Carolina</u>, 47 N.C.L. Rev. 285, 288 (1969).

Thus, the "gist of an action for abuse of process is the improper use of the process after it has been issued." <u>Manufacturers & Jobbers Finance Corp. v. Lane</u>, 221 N.C. 189, 196, 19 S.E.2d 849, 853 (1942) (citing <u>Glidewell v. Murray-Lacy & Co.</u>, 124 Va. 563, 98 S.E. 665 (1919) and 1 Am. Jur. <u>Abuse of Process</u> § 34 (1936)). "There is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." <u>Id.</u>, 221 N.C. at 196-97, 19 S.E.2d at 853 (citations omitted).

Contrary to Lucent's assertion, Mr. Taylor has not "filed and re-filed cases up and down the Eastern seaboard" [Doc. 7-1 at 11] in a manner that would constitute an abuse of process. While Mr. Taylor has brought multiple actions in relation to Ms. Taylor's asbestos exposure, these actions involve various factual allegations against various defendants. Mr. Taylor initially brought the South Carolina case against other defendants, and only added Lucent as a defendant after it conducted discovery and learned of Lucent's involvement. [Doc. 10 at 5]. Due to the South Carolina "door closing statute," S.C. Code Ann. § 15-5-150, Mr. Taylor filed suit against

Lucent in Delaware and planned to litigate there until Lucent moved for dismissal based on forum *non conveniens*. [Doc. 10 at 8]. The dismissal order in Delaware specifically noted that the case was "dismissed without prejudice to refiling in another appropriate jurisdiction." [Doc. 7-11 at 2-3]. Thus, Mr. Taylor properly initiated suit against Lucent in this Court. Under these circumstances, Mr. Taylor's actions do not constitute abuse of process. Lucent's request for a dismissal on this basis is therefore denied.

### C. Attorney Fees and Costs

Finally, Lucent requests an Order to stay the case pending payment by Mr. Taylor of attorney's fees and/or costs incurred in defending Mr. Taylor's prior litigation pursuant to Fed. R. Civ. P. 41(d), Fed. R. Civ. P. 11, and 28 U.S.C. § 1927. [Doc. 7 at 2]. Rule 41(d) of the Federal Rules of Civil Procedure provides that "[i]f a plaintiff who previously dismissed an action in any court based on or including the same claim against the same defendant, the court (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). Additionally, "reasonable attorney's fees and other expenses directly resulting from" a violation of Fed. R. Civ. P. 11(b) can be imposed as a sanction. Further, an attorney "who so multiplies proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Lucent is not entitled to relief under Rule 41(d) in this action. As discussed previously, Mr. Taylor's present action in this Court is not "based on or including the same claim against the same defendant" as his South Carolina case since his factual allegations are distinct with regard to the sources of Ms. Taylor's asbestos exposure. [Docs. 1, 7-4]. In any event, Mr. Taylor's South Carolina action against Lucent is still pending. Additionally, Mr. Taylor did not dismiss the Delaware action. Rather, Lucent moved for that action to be dismissed and the court allowed the dismissal "without prejudice to [Mr. Taylor] re-filing in another appropriate jurisdiction" and without requiring Mr. Taylor to pay Lucent's costs or attorney's fees. [Doc. 7-11 at 2-3].

Further, Lucent is not entitled to sanctions under Rule 11. Lucent failed to make a "motion for sanctions . . . separately from any other motion . . . describ[ing] the specific conduct that allegedly violates Rule 11(b)" or to properly serve Mr. Taylor with a Rule 11 motion 21 days prior to its filing, as required by Fed. R. Civ. P. 11(c)(2).

Finally, Lucent is not entitled to an award of fees or costs under 28 U.S.C. § 1927. A "finding of counsel's bad faith" is "a precondition to the imposition of fees" under 28 U.S.C. § 1927. Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n. 25 (4th Cir. 1991) (citing Blair v. Shenandoah Women's Center, Inc., 757 F.2d 1435, 1438 (4th Cir. 1985)). Mr. Taylor's counsel for the South Carolina action properly added Lucent as a defendant after discovery, and Mr. Taylor's counsel filed the Delaware action reasonably, due to the South Carolina "door closing statute," S.C. Code Ann. § 15-5-150. Thus, the Court finds that there is no evidence of bad faith on the part of either of Mr. Taylor's counsel in the South Carolina and Delaware actions.

## III.  CONCLUSION

Upon careful consideration of the arguments of both parties in this case, the Court concludes that it retains jurisdiction of this case, that there was no judicial abuse of process by the Plaintiff in this case, and that the Plaintiff should not be required to pay the expenses incurred by the Defendant in the prior litigation. Accordingly, the Defendant's Motion to Dismiss [Doc. 7] is denied.

**O R D E R**

**IT IS, THEREFORE ORDERED** that the Defendant's Motion to Dismiss [Doc. 7] is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 26, 2014

Martin Reidinger
United States District Judge